**RECEIVED**

APR 2 9 2025

**BY MAIL**

United States District Court
Eastern District of Missouri

Todd Jeude - Plaintiff, Pro-Se

v.

SSM St. Clare Hospital

Koren Schram, PA

~~Mathew Hrastich, MD~~ Dr. David Brummett

~~John Doe, MD~~ Dr. Mathew Schwab

- Defendants.

June 29, 2024

Case No.

_____
Judge

COMPLAINT:

42 U.S.C. § 1395 dd,

EMTALA,

§538R.S.Mo.

United States District Court
Eastern District of Missouri


Jeude                          )
    Plaintiff, Pro-se        )
v.                             )          Case No.
                               )
SSM St. Clare, et al           )
    Defendants

## Table of Contents

  i Civil Cover Sheet

 ii Table of Authorities

iii Complaint

A. Background

B. Parties

C. Jurisdiction

D. Facts

E. Legal Theory

F. Relief Request

G. Prayer

H. Affirmation

I. Exhibits

    Motion for IFP

    Motion for Appointment of Counsel

    Memorandum Support for Motions

Civil Cover Sheet

Plaintiff:                                          Action/Civil:
Todd Jeude 35912-044                                42 USC §1395dd
USP                                                 EMTALA
P.O. Box 5000                                       §538R.S.Mo.
Yazoo City, MS 39194
tjeude1973@gmail.com

Emergency Contact:                                  I.F.P. Application
Shirley Jeude                                       Appt. Counsel
7655 Watson Rd. Apt. 130
St. Louis, MO 63119
314-925-8596
Todd xxx-xx-7765   02-01-1973      51 y/o Male


Defendants:
1. SSM St. Clare Hospital (Fenton Missouri)
2. Koren Schram P.A.
3. ~~Mathew Hrastich M.D.~~ David Brummett MD
4. ~~John Doe M.D.~~  Mathew Schwab MD
                      Address for All defendants:
                         SSM St. Clare Hospital
                            1015 Bowles Ave
                            Fenton, MO 63026

          Hospital General Counsel - Mr. Douglas Long


                              Respectfully Submitted,
                              6/28/24
                              Todd Jeude 35912-044
                              Plaintiff, Pro-Se

United States District Court
Eastern District of Missouri


Jeude                              )
   Plaintiff, Pro-se              )
v.                                 )          Case No.
                                   )
SSM. St. Clare Hosp., et al        )
   Defendants                     )

## Table of Authorities

42 USC §1395dd, EMTALA

§538 R.S.Mo.

42 USC §1395dd(d)(2)(A)

§1395dd(a) and (b)

Title 36 Revised Missouri Statutes, 537 and 538

28 USC §1331

28 USC §1367

28 USC §1391(b)(2)

28 USC §2201

Fed. R. Cu. P. Rule 57

Rule 8(a)(2)

Summers v. Baptist Med. Ctr. Arludelphia Ark 1996

§1395dd(e)(1)A(i),(ii),(iii)

Pennington-Thurman v. Christian Hosp. Northeast (8th Cir.)

Todd Jeude v. City of St. Louis, 4:22-cv-989MTS

§537 R.S.Mo.

28 USC §2201, Rule 57

28 USC §1746

Respectfully Submitted,

Todd Jeude 35912-044
Pro-Se,

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI


Todd Jeude       )
  Plaintiff, Pro-se,    )
             )
             )
v.            )  Case No._____
             )  Judge_____
SSM St. Clare Hospital,  )
Koren Schram, P.A.,   )
~~Mathew Hrastich, M.D.~~, David Brummett, MD )
~~John Doe, M.D.~~  Mathew Schwan MD )
  Defendants.     )
_____/

**COMPLAINT:**
pursuant to: 42 USC §1395dd, EMTALA, and,
pursuant to: §538 R.S.Mo. State Medical Claims

1. COMES NOW, Todd Jeude, Plaintiff, Pro-se in the above action, pursuant

to F.R.C.P. Rules 7 and 8, and presents the following information for

this Honorable Courts review of EMTALA and State Law claims of Medical

negligence and malpractice;

**A. BACKGROUND**

2. Plaintiff was seriously injured in a motorcycle/ATV wreck requiring

emergency medical care for his serious medical needs. Jeude was presented

to the Defendant emergency room with obvious need ofr care due to visible

injury and complaints of severe plain and impairments of body parts such

as the use of his arm or being able to walk unassisted. Jeude disclosed

with the Defendants that he did not have health insurance or the ability

to pay for the services he needed and was requesting. As a result of this

disclosure to the Defendants, Jeude was not treated with a standard of care

reasonable to his injury. This substandard of care Jeude received caused

further injury to Jeude resulting in weeks of further pain and suffering

/

due to an infection caused by a foreign object in Jeudes body as a result of the motorcycle wreck. Jeude was patched up, and bandaged up, but rolled out to the waiting area, unstabilized in a wheelchair, where he waited for a ride to pick him up.

## B. PARTIES

3.      Plaintiff- Todd Jeude is a native of St. Louis Missouri, currently in federal custody on a probation violation. Jeude has a release date of May 2025. His current address: Todd Jeude #35912-044 USP Yazoo, P.O. Box 5000, Yazoo City MS, 39194.

4.      Defendant- SSM St. Clare Hospital, is a Critical Care Access Unit with emergency and ancillary services. St. Clare is a participating hospital for EMTALA purposes, and is located at: SSM. St. Clare Hospital, 1015 Bowles Ave. Fenton MO, 63026.

5.      Defendant- Koren Schram, P.A. is a licensed physicians assistant in the State of Missouri, employed by SSM. St. Clare Hosp., and during relevant times to the subject matter of this claim was the primary physician who tended to Jeude on Julky 4, 2022, Ms. Schram has a business address of: SSM St. Clare Hosp. 1015 Bowles Ave, Fenton MO, 63026.

6.      Defendant- ~~Mathew Hrastich~~, M.D. is a radiologist either employed
        _David Scammett M.D.,_
        _SAME Info_ or contract by SSM St. Clare to provide radiological services for patients of SSM St. Clare. He was the rediologist at all relevant times to the subject matter of this litigation who was responsible for providing prudent and careful service in regards to the taking, reading, and diagnosing images of this plaintiff's injuries. Dr. Hrastich has a business address of: SSM St. Clare Hosp. 1015 Bowles Ave Fenton MO, 63026.

1

Mathew Schwab M.D. (or, for it)

7.    Defendant- ~~John Doe~~, M.D., this defendant's identity is on the record

as the ER. Chief or Physician Administrator, who, on

July 4, 2022, was repsonsible, by law, to oversee and

sign off on all medical orders and decisions of P.A.

Schram as she tended Jeude in the defendant E.R. (Miss-

ouri low requires a physician to be in close proximity

to P.A.'s in hospital E.R. units). Plaintiff will pro-

vide this doctors identity when the plaintiffs records

catch up to him shortly. John Doe, M.D. also has an

address of SSM St. Clare, 1015 Bowles Ave, Fenton MO

63026.

## C. Jurisdiction

8.    42 USC §1395dd(d)(2)(A), provides for a civil action on behalf of
of a participating hospitals violation of a requirement under the
provisions of EMTALA, (§1395dd(a) or (b)).

9.    Title 36, of the Revised Missouri Statutes, chapters; 537 and 538
provide actions in part for an individual who suffers personal
injury, and personal injury against a medical provider, due to
negligence and malpractice.

10.   The primary claim at bar is a question of federal law, authorized
pursuant to; 28 USC §1331, with state law pendant claims, authorized
pursuant to this court's supplemental jurisdiction, provided by
28 USC §1367.

11.   Venue is correct in this United States District Court, as the
Easter District of Missouri is the geographical location where
the events which had given rise to this claim occured, as prescribed
by; 28 USC §1391(b)(2).

12.   Authorized by 28 USC §2201, this court may grant declaratory relief

3

pursuant to Fed. R. Cir. Pro. Rule 57, and finally,

13.   According to Rule 8(a)(2), this plaintiff is entitled to relief against the defendant parties.

### D. Facts

14.   On July 4, 2022, Jeude presented to the Defendant hospital's emergency department (E.R.) at; 1015 Bowles Ave Fenton MO 63026, seeking emergency medical care, for serious bodily injuries he sustained after being involved in a motorcycle/ATV accident. Catina Misch of Enton Missouri presented Jeude to the ER desk as Jeude was unable to walk unassisted.

15.   Jeude disclosed that he was uninsursed and unable to provide payment for the medical he needed. Jeude was ushered off into an exam room where a medical tech followed. Inquiring of employment addresses and phone numbers and other financial matters.

16.   Jeude was unable to disrobe himself and nurses began cutting sections of Jeudes clothing away in order to expose injuries.

17.   Jeude could not move his right arm without unbearable seering pain ripping through his shoulder, neck and arm. On his forearm he was covered in road rash from his elbow, to wrist on the top portion of his forearm. His right leg was also injured and had a smaller area of road rash and other abrasions and contusions. Jeudes hands and knuckles were skinned and bruised. Jeude was wearing a helmet but still complained of pain on his right side.

18.   P.A. Schram did a quick physical exam, flashlit the plaintiff's eyes and asked about head trama, or pain. She then ordered x-rays and a CT scan. Jeude was also given a narcotic pain pill at this time which had an effect on him. It made him extremely drowsy.

19.   Jeude went through the x-ray and CT process and was brought back back into the ER exam room where nurses finished cleaning,

𝒰

cleansing and dressing Jeude's abrasions and obvious injuries. Jeude dozed off and slept several times during this period.

20.    P.A. Schram returned to discuss the radiological results. She informed Jeude that the x-rays were unremarkable as were the CT scans. Jeude was fitted with an arm sling, at this time to immobilize his injured arm.

21.    P.A. Schram voiced her concern of the plaintiff's ability to fall asleep so often during an interview or exam. She further stated that she contemplated another CT scan, but wanted to discuss possible consequences. She explained these procedures to be very expensive and could subject a person to collections or other financial problems. This plaintiff asked whether or not this CT was mandatory, and she immediately replied absolutely not, completely precautionery. The plaintiff then asked if the roles were reversed, and it was her needing it done, she again said it was totally precationary, and would probably reveal nothing.

22.    Jeude asked about a treatment plan for his arm and shoulder as he was experiencing unbelieveable waves of pain and could not move his arm. Ms. Schram informed this plaintiff that she was refering the plaintiff to an orthopedic and that the provider would order an MRI to better treat the injury. This plaintiff asked why that was not being done now considering the pain level and inability to move his arm, and P.A. Schram provided that the injury did not appear to be life threatening so the hospital would refer the issue out.

23.    With that, this plaintiff was discharged while voicing concern about the uninterupted pain in his arm and shoulder, and his inability to walk unassisted.

24.     Jeude was put in a wheel chair, given discharge orders and rolled
        into the waiting area and then out to the porch to wait on his
        ride, unable to walk unassisted, or move his arm in anyway.

25.     On July 6, 2022, Jeude was arrested for a supervised release
        violation in the city of St. Louis. Jeude was taken to South City
        Hospital on S. Broadway prior to being booked into the St. Louis
        Justice Center. Jeude was examined, rebandaged, issued another
        arm sling and ordered fit for confinement. Jeude also complained
        of head pain near his ear at this time.

26.     Jeude was booked into the Justice Center, and four days later
        the pain in Jeude's ear and head had escalated to the point he
        screamed out in pain on several occasions. See: Jeude v City of St. Louis

27.     By July 12, 2022, Jeudes ear was red, swollen, and hurt constantly
        with flashes of pain into his head.

28.     Jeude self declared a medical emergency and was put on an
        expedited list to see Dr. Brenda Mallard, Corizon LLC. a contracted
        physician on staff at the Justice Center.

29.     On July 14 2022, Jeude was seen by Dr. Mallard and by this time
        Jeude was dizzy with pain, literally.

30.     Dr. Mallard examined all of Jeude's injuries, rebandaged him,
        ordered him more pain meds and a new arm sling. She then began
        the physical exam of Jeude's right ear. She touched his ear and
        he screamed out in pain. She ordered a nurse to inject a torque
        shot or something along that line. Within 15 minutes it numbed
        Jeudes body pretty effectively. She then resumed the exam.
        Dr. Mallard was able to peer down into Jeudes ear canal and was
        able to identify a blockage of some sort. She was unable to
        identify it by name or characterization, but that it was foreign

and should not be there. The plaintiff was unable to provide
any clue other than the only tramatic event he had been subjected
to was the motorcycle wreck. Dr. Mallard decided to extract the
object. She retained Nurse Brown to assist and keep the plaintiff
still.

31.    Dr. Mallard locked onto the object and began the process of
extracting the blockage back out of the plaintiff's ear canal.
The process was excruciating and the plaintiff wished he would
pass out. Suddenly it was out and the pressure was instantly
released.

32.    Dr. Mallard and the plaintiff studied the object and the
plaintiff immediately identified it as the rubber ear fitting
from his mp3 ear buds he had been wearing when riding the motor-
cycle. The fitting was covered in ear wax like  a scablike
material. Dr. Mallard identified the composites to appear to be
the biproduct of infection. She ordered antibiotic ear drops
to fight the infection.

33.    The infection lasted another 10 days at which time Dr. Kelly
examined the ear and discontinued the drops.

34.    Severla weeks expired and Jeude obtianed the medical record from
his emergency room encounter at the defendant hospital's ER.
After review of the record, it was determined that on July 4th
2022, Dr. Brummett did not report anything remarkable on the CT
Scan. However, there was no mention by P.A. Schram at executing
a thorough ear, nose, and throat exam. As should have been done,
and a little further yet into the record, in September, 2022,
Dr. Brummett and another radiologist revisited the scan of Jeude's
head. In this viewing, Dr. Brummett reports; "slight curvilinear
opacification of unknown etiology in the outer auditory canal,

7.

view in clinic to..." revealing that on July 4th 2022, nothing was reported, nor did P.A. Schram indentify the foreign object despite reports of pain in the plaintiff's head around his ear.

35.    This plaintiff filed suit in Jefferson County Circuit Court pursuant to §538RSMo. which was transfered to St. Louis County Circuit Court, and this plaintiff voluntarily dismissed as he was incarcerated in a county jail with literally no law library or ability to research.

36.    After consulting and pointed out the obvious EMTALA undertones standard of care that shoudl have been triggerd by the plaintiff's injuries, but wasn't, and led to serious injury.

37.    Jeude is now settled in at USP Yazoo City for the next 18 months and is able to devote the time necessary to prove his claim.

37.    Jeude is currently waiting on the records to catch up to him here, but 42 USC §1395dd(d)(2)(A) has a two year statute which will expire on July 4, 2024. Jeude is filing now to preserve his right to allege these contained EMTALA violations, and for review of this court.

38.    Furthermore, Jeude has also forwarded a $7,500 claim for personal injury to; MR. Douglas Long, JD, General Counsel, Mr. John Nguyen   and  .  .  .  .   in a good faith effort to avoid litigation. The Defendants have until the first of August 2024 to accept.

## E. Legal Theory

### Count 1

40. Jeude against defendant hospital; failure to appropriately screen, §1395dd(a)

41  Participating hospitals such as SSM st. Clare have a limited duty under 42 USC §1395dd to provide appropriate screening procedures and stabilization requirements to individuals who are presented to their ER's seeking emergency care for their serious medical needs.

42  See: Summers v. Baptist Med. CT. Arkedelphia Ark. Subsections (a) Medical Screening Requirements; "In the case that a hospital has an emergency department, if any individual comes to the emergency department and a request is made on the individuals behalf for an examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening within the capabilities of the hospital ER including ancillary services routinely available to the ER to determine whether or not an emergency conditions exists (within the meaning of subsection (e)(1)).

43      Section (e)(1) provides;

(1) the term, "emergency medical condition" means:

  (A) a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the abcense of immediate medical attentions could result in:

    (i) Placing the health of the individual in serious jeopardy.

    (ii) Serious impairment of a bodily function.

    (iii) Serious dysfunction of any bodily part or organ.

44. Jeude points  out points of interest provided by St. Clare's own record of the encounter on 7-4-22.

45.  St. Clare provided Jeude a quick patch up of his obvious bodily
     wounds and abrasions. However he was wheeled out to wait on a ride
     despite complaints of serious pain, the inability to use him arm or
     walk without assistance. His obvious injuries in fact diagnosed, and
     then treated and stabilized. However, his serious injuries were only
     glossed over and referred out to other specialists. An insured
     patient woudl never have been rolled into  the waiting area, discharged
     waiting on a ride unable to use their arm or walk un-assisted.

46.  Jeude was not investigatively diagnosed fully according to the
     hospitals own established protocols. Because the hospital did not
     want to be obligated to stabilize costly and prolific injuries.

47.  This second best standard of care Jeude was given because he was
     uninsured, directly and proximately caused ~~and~~ Jeude further injury
     and severe pain.

48.  Take for example Jeudes arm and shoulder injury. The hospital  is
     aware that Jeude can not move his arm with out excruciating pain.
     At this point the hospital has a duty to find out what the problem
     is. St. Clare did not do this. The defendant did x-ray to rule out
     breaks or fractures, but they stopped there and immobilized the arm.
     The normal protocol, when a patient exhibits the severe pain and
     dysfunction of a body part such as Jeude's would have been to order
     further radiological images to reveal the injury. Instead, deviating
     from that norm, the hospital patched Jeude up and rolled him out
     into the waiting room.

49.  This "surface screening" that St. Clare provided Jeude, cna never be
     said to have been reasonably calculated to identify and disclose
     serious injury. St. Clare may establish their own protocols for their
     ER, but once they do, they have a duty to provide that same protocol

equally, to all individuals regardless of their ability to pay.
see again: Summers v. Baptist Med. CTR.

50.    St. Clare treated Jeude to the second best and sent him on his
       way in serious pain, with serious dysfunction of a body part,
       and a foreign object in his ear. This intentional deviation of
       hospital protocol, because of this plaintiff's inability to pay,
       represents carelessness, and recklessness. Jeude was discharged
       blatantly unstabilized and with a foreign object in his ear.
       (that the CT scan clearly revealed on 7-4-22). This object caused
       a nasty infection requiring additional medical treatment and
       subjecting Jeude to more severe pain and discomfort.

51.    This second best screening had a disparate impact on Jeude. It was
       detrimental to his health, and did cause further injury and
       pain. The established protocol, woudl have identified the forgein
       object on 7-4-22, (not September) leading to its timely removal
       and treatment, without the further injury it caused Jeude.

52.            Jeude against Defendant Hospital for failing to stabilize
               his known serious medical condition prior to his discharge.

53.    §1395dd(b) provides that St. Clare hospital should have, by law,
       stabilized Jeude's condition before discharging him and rolling
       him out into the waiting room to wait on a ride unable to move
       his arm or walk without assistance, and definitely should not
       have let Jeude go with the foreign object left in his ear.
       See: Pennington - Therman v. Christian Northeast Hosp. (8th Cir)

54.    (b) Stabilization Requirement

       (1) In gneral if any individual comes to a hospital and the
           hospital determines that the individual has an emergency
           medical condition, the hospital must provide either:
       A) Within the staff and capabilities at the hospital for

ll

such fruther medical examination and such treament as may
be required to stabilize the medical conditions, or

B) For transfer to a facility within the meaning of subsection(C).

55.   Koren Schram and her associates seemed to provide some care to
Jeude and got him patched up, referred out, and rolled out the
door. In obvious pain, unable to walk by himself and of course
with a foreign object in his ear canal that everyone except the
CIT-Scan missed. They did this according to a plan and procedure
that is not normally carried out, unless of course like Jeude
on individual presents with similar injuries and they too have
no insurance or ability to pay.

56.   Jeude is confident that a subpoena'd look look into the records
of individuals who, presented with injuries similar to Jeudes
who were also victims of motorcycle wrecks, with insurance,
will reveal a different screening protocol which consists of
more investigative diagnostics and treatments.

57.   Instead, Jeude, unable to pay, in obvious pain and dysfunction
of body parts and foreign objects left in his body, was discharged
unstabilized, in pain and discomfort.

58.   St. Clare had a duty to provide Jeude with a uniform medical
screening. One reasonably calculated to discover the extent of
his injuries, and then medical care commensurate with a reason-
able dianosis. Uniform too all individuals who present with
similar injuries whether they have insurance or means to pay
or not.

59.   St. Clare breached these lawful duties it owede Jeude. St. Clare
further subjected Jeude to a non-uniform, substandard level of care
that failed to fully identify Jeudes serious injuries and then

discharged Jeude fully aware of his inability to move his arm or walk unassisted, with a foreign object in his ear canal which later caused immeasurable pain for days, and residual lingering for weeks.

## COUNT III

60.                   ## §532 and §538R.S.Mo.

### State Law Personal Injury and Medical Negligence Claims

61.        Jeude against Defendants; St. Clare Hosp., PA Schram, Dr. Hrastich, and Dr. John Doe

62.        Koren Schram, PA, owed a duty to Jeude, according to law, to provide the same skill set or knowledge, that other prudent reasonable professionals in her field of expertise would have provided any other individual under the same or similar set of circumstances. In breach of that duty, Ms. Schram intentionally chose to deviate from the hospitals established protocols, which provide guidelines and procedures for processing on individual requriing emergency medical care in order to reasonably dianose and indentify potential life or health threatening injury, because of Jeude's inability to pay.

63.        He had Ms. Schram adhered to the established protocol in question, AS she should have done, she more probably than not would have lcoated and indentified the foreign object in Jeude's ear during the required; "Ear, nose, and throat exam," Which usually takes place contemporaneously when triaging the individual during recording of his vital signs, but did not on this occasion, and should have.

64.        Secondly, had she followed the established protocols when screening Jeude, Schram would have communicated more information to the

radiologist about key locations and areas of pain Jeude reported.
where common sense might cause a person to presume the radio-
logist might indeed have taken a closer look. Very little is said
of any review or comparative of information shared between these
two providers, leading one to believe that hte objective which
should have been to locate, identify and diagnose this patient
injuries, wasn't the objective at all. The actions of these
providers show the mechanics and motions of what might noramlly
take place, and truly investigating potential threats and hazards.
Almost like a practice scrimmage or "dry run."

65.    Jeude presented to the ER desk reporting a 50 year old motorcycle
accident, victim with obvious abrasions, open wounds, unable to
move arm or shoulder and unable to walk unassisted. No health
insurance. The potential here for costly dianostics and treatment
is scary. St. Clare wanted no part of this responsibility.
Afterall, anything they discovered or dianosed, they were obligated
to treat, or obvious liability.

66.    What happened to Jeude was not accidental, negligent or the  wrong
choice under due care. This was practically an entire department
working in concert together, wittingly or unwitting remains to be
proven, but an entire department to provide what appeared to be
an appropriate standard of care, but in reality was a farce and
in no way intended to reveal or identify the actual injuries
Jeude sustained for example, Jeude's shoulder was x-rayed. The
x-ray returned unremarkable so no breaks or fractions, but due to
the intense, searing pain Jeude reported as constant, and the
fact that this injury seriously impacted Jeude's abiltiy to mpve
his body and especially his arm, the invetigation should not have

stopped there. But they did. And they did, not because of neg-
ligence or accident, but because Jeude was unable to pay for
what was potentially to be revealed by  CT or MRI. The exam
stopped at an x-ray and an arm sling, because St. Clare did
not follow the normal and accepted standard of care in this
situation, they did not want to provide an MRI and potential
immediate surgery in order to stabilize Jeudes emergency
condition. So they immobilized the arm, referred him to an
orthopedic, and discharged him unstabilized and in obvious
completely contradicting  their own established procedure
for treating someone like Jeude who of course would have
presented with health: insurance or a credit card.

67     Fiscally it makes perfect sense to do, what the plaintiff has
just alleged the defendant of having done. The ER does the
bare minimum, makes sure nothing is truly life threatening
right then and there, and patches the patient up with a
referral knowing exactly what the potential extent of the
injury is.

68     Emergency and intricate body parts such as described, could
cost over one hundred thousand US dollars instantly. The
hospital takes a chance at escaping liability because as
this plaintiff can affirm, it is no easy talk to get compensated
by a mega corporation that intentioanlly injured you in order
to save a few thousand dollars. So they discharge the uninsured,
after running a few irrelevant tests which were not geared to
actually do what the test is normally intended to do in the
first place. Another example: The foreign object was recorded
on 7-4-22. On information and belief, this plaintiff believes

the lack of communication evidenced in the medical record bet-
ween Schram and Hrastich was intentional. On the day the
plaintiff presented to the ER, with complaints of someone trying
to discover a reason for this pain and injury cant find a
foreign object left int he patients HEAD. But come back the
following month doing a follow-up or file closure and Wham,
there it is plain as day, a foreign object in Juede's ear canal
that now all of the sudden we're concerned about.

69.     Juede, upon presentation as an uninsursed, unable to pay,
indigent patient with potential serious injury and need for
corrective surgery or treatment, was immediately provided a
screening procedure that as NOT reasonably designed to identify
or locate acute serious injury, but only appeared as appropriate,
but in reality provided no more information than a patient
questionaire upon requesting the  treatment, During Check-in.
Juede was given this substandard, unequal, non uniform method
of screening for the simple fact he was indigent and potentially
coudl have cost the hospital thousands if they would have done
the established screening protocol that insured or financially
able patients normally receive at St. Clare when presenting
similar circumstance as that of Juede.

70.     As Juede's primary during this encounter, Schram set the stage
and carried out the entire procedure. It is unknown at this
time whether or not Ms. Schram was ordered to apply the
'second best' protocol to Juede, or if this is an off the record
standard event for all non paying patients.

71.     Juede had originally filed suit against the St. Louis Justice
Center for the pain he was in and so forth. See:
Juede v City of St Louis 4:22cv989MTS

16

After filing that suit and gaining information from sources, it became clear and evident, that Jeude was suing the wrong defendant. Had St. Clare provided him with, then no further injury, more probably than not, would have occurred. St. Clare almost scraped by without at least having to answer these allegations.

72.   Koren Schram, PA is an employee as contracted provider for SSM St. Clare. She carries liability insurance for negligence and malpractice claims·· and has therefore waived any Missouri any Missouri immunity privilege. In any event, these acts are alleged as intentional and malicious, and therefore not subject to immunity protection.

73.   Schram owed Jeude a duty to provide prudent, reasonable care, commensurate with the standard of care used by others in her field of expertise, and failing and in breach of that duty and intentioanlly deviating from that standard of care, her actions, made in the scope of her employment with St. Clare, were the direct and proximate cause of Jeude's injury, causing pain, suffering and emotional distress. Schram is liable to Jeude for damages.

74.   David Brimmett
~~Mathew Hrastich~~, M.D.

on 7-4-22, team player Dr. Hrastich reports unremarkable x-ray and CT scan viewings of Jeudes body.

76.   In sept. of 2022, Dr. Hrastich authors a follow up, and a fellow physician presents at this time, concurs, that; "a slight curbilinear opacification of unknown etiology present the right outer auditory canal, view in clinic..."

77    Accidents  happen, physicians work exhausting hours, they are pushed to the edge and past of fatigue, and 99.9% of the time

17

they do a remarkable job. Fantastic, but accidents happen. This plaintiff is just haivng trouble differentiating when, what and where the accident occured. Was on 7-4-22 in not reporting the obvious unknown curved blockage in Jeudes right ear, or was the accident in actually reporting it on the record at a later date? Either way it only helps to establish the haphazard and deliberatly indifferent attitude and action  pertaining to to Jeudes serious medical needs on 7-4-22 that were intentionally denied him.

78      Dr Hrastich is a radiologist employed bv St. Clare, or contracted by St. Clare, or employed by a company which in contracted to supply radiologist to St Clare, St. Clare and Hrastich owed Jeude a duty to provide prudent, careful radiological services as would any other prudent careful provider in that field of expertise under  the same or similar circumstances as Jeude. Hrastich, through his negligence, or recklessness or indifference to Jeudes wellfare, was on obvious breach of that duty. Dr. Hrastichs actions in concert with the other defendants and even more so on his own, was the direct cause of Jeudes injury. Dr. Hrastich's failure to provide the services he is contracted and trusted to provide, caused Jeude weeks of unbearable pain  and suffering. Jeude had pain so intense at times he reported as praying 'or death to come take him if he was able to sleep. Jeude was hurt. This injury had an impact  on Jeude that will last quite awhile. It was the cause of pain, suffering, and emotional distress.

80.     These acts were commmitted by Dr. Hrastich through the  scope of his duties to St. Clare, and were reckless and irresponsible.

Hrastich is liable to Jeude for damages.

81              ; ~~Dr. John Doe.~~
                    Mathew Schwab MD

82.    When hospitals utilize the services of a P.A., a physician,
       per Missouri statute, is on site and present in the ER. These
       physicians are required to sign off on all orders and actions
       taken on a patient by the P.A. This is the "doctor of record"
       When claims such as the instant case at bar are filed.

83.    Dr. John Doe is ultimately responsible for all the actions
       Schram took pertaining to Jeude on 7-4-22. Jeude fully
       incorporates the allegations and statements pertaining to
       Schram, and fully incorporates them here in this claim against
       Dr. John Doe.

84.    Dr. John Doe is either contracted or an employee of St. Clare
       and is a supervisor adiministrator. He owed a duty to provide,
       or cuase to be provided, and protection from error or negligence.
       Dr. Doe's actions are grossly negligent and recklesly indifferent.

85.    Dr. Doe is responsible for Jeudes injury. As a result of his
       tacit approval or direct approval, this plaintiff has reason
       to believe that Dr. Doe may not have even been present or
       carried out his duty according to law, on 7-4-22. No one else
       seems to. And this careless, indifferent attitude toward Jeudes
       health and wellfare were the direct and proximate cause to
       Jeude's injury. By not executing his job in a reasonable
       manner and actually oversee and manage and correct Schrams
       wrongs, Doe's directly responsible for the injury to Jeude.
       Doe breached the duty he owed the State of Missouri, the hospital,
       and this patient. He is liable to Jeude for damages.

86.                    **SSM St. Clare**

87.                    Respondeiat Superior-

19

88.     Under the theory, St. Clare owed Jeude a duty to provide
        appropraite, responsible and prudent management and training
        of all the personel performing a service for the hospital rel-
        ating to medical care of it's patients.

89.     Jeude fully incorporates the allegations and legal claims in this
        document as being fully set forth here in this claim against
        St. Clare.

90.     St. Clare miserably failed at managing their providers and
        allowed them to operate under the normal and accepted standard
        of care for area units.

91.     St. Clare turned a blind eye for to the actions of it's
        employees and did not hold them accountable for the substandard
        care they  provided, even after  being placed on  notice in
        the original suit filed by this plaintiff in 2023.

92.     Jeude alleges that SSM St. Clare and the individual defendants
        all have liability coverage for claims and complaints such as
        the instant case at bar. Missouri immunities are not applicable
        in this case and are waived.

93.     These allegations provide that the defendants jointly are in
        breach of a duty that was owed to Jeude to provide that
        knowledge and skill set that other responsible providers
        in their respective fields of expertise would have provided
        under the same circumstance. As a result of the defendant's
        failure to provide that responsible prudent standard of care
        was seriously injured and suffered pain and discomfort for a
        needlessly prolonged time.

94.     The defendants jointly in concert with and acting together
        intentionally withheld essential medical care for Jeude's
        serious medical needs because of his inability to pay. Pursuant

to Rule 8(a)(2), at this stage of the litigation, the plaintiff
has put the defendant's on fair notice of what he can prove
at trial, and plaintiff  is entitled to relief.

95.                          **F. Request for Relief**

96.     Pursuant to Rule 57 Jeude will seek declatory relief and
        incorporate that pleading after discovery if it please the court.

97.     A.    Jeude against the Defendant Hospital for violations of
              of EMTALA,

        Count I        §1395dd(a) - Jeude is seeking $25,000
                                    Compensatory Damages.

        Count II       §1395dd(b) - Jeude is seeking $25,000
                                    Compensatory Damages.

98.     B.    Jeude against Individual Defendants including hospital

        Count III      §538R.S.Mo.- Jeude is seeking $75,000
                                    Total, alternative consistery against
                                    each or all defendants to be deter-
                                    mined by this court's judicial
                                    experience in these matters.
                                    Jeude is seeking compensatory
                                    damages, $75,000 in total,
                                    a percentage of liability to be
                                    determined by the Honorable
                                    Court.

                              **G. Prayer**

99.     WHEREFORE, plaintiff Pro Se, prays this Honorable Court enter
        Judgment in favor of the plaintiff against the defendants
        and award damages in a fairand equitable amount so as to do
        justice  Jeude also request reasonable attorney fees and

and costs and any other relief this Honorable Court deems
appropriate.

Respectfully Submitted,

Todd Jeude 35912-044
USP Yazoo City-Medium
P.O. Box 5000
Yazoo City, MS 39194
Plaintiff, Pro-Se
Tjeude1973@gmail.com

100.

### H. Affirmation

Under pains and penalty of perjury, I Todd Jeude, Plaintiff in
the above action, do certify and affirm that the contents and
statements to be true and correct. Pursuant to 28 USC §1746.

Respectfully Submitted,

Todd Jeude 35912-044
Affiant/Plaintiff

22